## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**KAREEM ALI,**
**a/k/a Kareem Ali-X and**
**Kareem Born Allah Ali X,[1]**

     **Petitioner,**

**v.**                             **Case No. 3:16cv88-MCR/CAS**

**STATE OF FLORIDA, and**
**JULIE L. JONES, Secretary,**
**Department of Corrections,[2]**

     **Respondent.**
_____/

### REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On February 29, 2016, pursuant to the mailbox rule, Petitioner,

Kareem Ali (a/k/a Kareem Ali-X and Kareem Born Allah Ali X), a prisoner in

the custody of the Florida Department of Corrections, filed his initial petition

for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.

---

[1] Petitioner identified himself as Kareem Ali in the caption of his Amended Petition, but he signed his Amended Petition as Kareem Ali-X and is currently in custody under the name Kareem Ali-X.  ECF No. 14 at 24.  He was convicted and sentenced under the name KAREEM BORNALLAH ALIX.  *See* ECF No. 31-12 at 111-13.

[2] Because Petitioner is an inmate in the custody of the Florida Department of Corrections (DOC), the Secretary of the DOC is the state officer who has custody of Petitioner and therefore is properly named as the Respondent in this case.  *See* Rule 2, Rules Governing Habeas Corpus Petitions under § 2254; *see also* Fed. R. Civ. P. 17(d). This order directs the Clerk to amend the docket accordingly.

Petitioner filed a memorandum in support of his petition on March 3, 2016. ECF No. 4.  Pursuant to order of court, Petitioner filed an amended petition by the mailbox rule on May 26, 2016, with attached memorandum in support of the amended petition.  ECF Nos. 10, 14. On March 27, 2017, Respondent filed an answer to the amended petition with exhibits.  ECF No. 31.  Petitioner filed his reply, with exhibits, by the mailbox rule on August 25, 2017.  ECF No. 37.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this amended § 2254 petition should be denied.

## Background and Procedural History

Petitioner was arrested on August 14, 2009, and ultimately charged by amended Information in the Circuit Court of Santa Rosa County, Florida, on October 10, 2011, in case number 2009-CF-1126 with one count of

conspiracy to engage in a pattern of racketeering (RICO), alleged to have

been committed in Santa Rosa County, Miami-Dade County, and/or Duval

County from on or about April 1, 2007, and continuing to or through on

about August 10, 2009.  Ex. C at 552.[3]  The Amended Information alleged,

in part, that Petitioner conspired with two other individuals to obtain income

tax refunds to which they were not entitled by means of conducting or

participating, directly or indirectly, in the affairs of the alleged enterprise[4]

through a pattern of racketeering activity, that is, committing, or soliciting

another to commit, at least two incidents of crimes chargeable under

section 817.568(2)(a), Florida Statutes, relating to criminal use of personal

information; 18 U.S.C. § 1341, relating to mail fraud; 18 U.S.C. § 1343,

relating to wire fraud; and/or section 812.014, Florida Statutes, relating to

theft.  Ex. C at 552.

---

[3] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through LLL submitted in conjunction with Respondent's answer.  *See* ECF No. 31 (31-1 through 31-30).

[4] The amended information incorrectly cited section 895.02(2) in reference to the definition of "enterprise" rather than 895.02(3), Florida Statutes (2007).  The defendants asked the court to require the State to prosecute the charged crime as one relating to unlawful debt, which is defined in 895.02(2) as collection of a debt that is legally unenforceable in this state.  Ex. K at 91- 93; Ex. L at 112-115 (transcript pagination).  The prosecutor indicated it was a scrivener's error and asked the court to allow an amendment to make the correction.  Ex. K at 92; Ex. L at 114.  The State's motion to amend was granted with a finding of no prejudice to the defendant.  Ex. L at 114.

On October 3, 2011, Petitioner, represented by counsel, filed a petition for writ of prohibition in the Florida Supreme Court alleging lack of subject matter jurisdiction and improper venue. Ex. JJ. That petition was transferred to the Florida First District Court of Appeal, which denied relief on November 9, 2011. Exs. KK, LL. Jury trial of Petitioner and codefendant Horace Young was held January 23-27, 2012, at which both Petitioner and Young appeared pro se. Exs. K-S.

At trial, the State presented evidence that Petitioner, his co-defendant Horace Young, and Andrea Blue agreed to submit false tax returns to the Internal Revenue Service (IRS) based on false W-2s for Florida Department of Corrections inmates whose personal information was used. Young would send the completed IRS forms to Blue who would mail them to the IRS. Petitioner's role in the plan was to receive direct deposits of the IRS refund checks into bank accounts set up in his name and that of several unregistered corporations. Funds were also deposited into Blue's account and she had a debit card to withdraw money from Petitioner's account at Wachovia Bank. The evidence included documents taken from Young's cell, bank account records, letters intercepted by the prison, certified records, and recorded telephone calls. Andrea Blue also testified at trial.

Petitioner was found guilty as charged of conspiracy to engage in a pattern of racketeering (RICO).  Ex. D at 653 (ECF No. 31-5 at 104).  He was adjudicated guilty and sentenced to 20 years in prison.  Ex. H at 1563-67; Ex. T.  Petitioner appealed to the First District Court of Appeal.[5]  Ex. II.  During the pendency of the direct appeal, Petitioner, pro se, filed a motion to withdraw his counsel's appellate brief and requested appellate counsel to withdraw.  Ex. AA.  He also asked to represent himself and to file an expanded brief of 100 pages.  *Id.*  Petitioner's counsel then filed a motion to withdraw based on Petitioner's pro se motion.  Ex. BB.  Petitioner's pro se motion was struck as unauthorized and his counsel's motion to withdraw was denied.  Exs. EE, FF.

Also during the pendency of the direct appeal, Petitioner filed a pro se petition for writ of prohibition in the Florida Supreme Court seeking to represent himself in his appeal.  Ex. MM.  The petition was transferred to the district court of appeal and was denied on the merits on March 26, 2014.  Ex. OO.  *See* Ali X v. State, 134 So. 3d 958 (Fla. 1st DCA 2014) (table).

---

[5] The issues raised on direct appeal were:  (1) the Faretta hearing was inadequate and Petitioner was forced to represent himself; (2) the State failed to allege and prove that Petitioner's trial was conducted in the proper venue; (3) the trial court erred in denying the motion to suppress; and (4) the trial court erred in denying Petitioner's motion to sever his trial from co-defendant Young's trial.  Ex. Y.

The First District Court of Appeal affirmed Petitioner's direct appeal per curiam without opinion on June 10, 2014. Ex. II.  The mandate was issued on June 26, 2014.  *Id.  See* Ali v. State, No. 1D12-1555, slip. op. (Fla. 1st DCA June 10, 2014) (unpublished), 2014 WL 2581575.

On February 23, 2015, pursuant to Florida Rule of Appellate Procedure 9.141(d), Petitioner filed a petition for writ of habeas corpus, with appendix, in the First District Court of Appeal alleging 13 claims of ineffective assistance of appellate counsel in his direct appeal.[6]  Ex. VV1; Ex. VV2.  Petitioner's motion to amend to add a 14th claim was granted. Exs. ZZ, CCC.  The State filed responses to all 14 claims and Petitioner filed a reply.  Ex. Ex. BBB; Ex. DDD; Ex. EEE.   On January 13, 2016, the

---

[6] Petitioner claimed in his habeas petition filed in the state appellate court that appellate counsel rendered ineffective assistance by: (1) failing to present a proper argument concerning Faretta and the procedure followed in allowing him to represent himself; (2) failing to properly argue the issue of venue; (3) failing to separately argue lack of subject matter jurisdiction; (4) failing to assert Brady and Giglio violations based on use of bank and financial records without a subpoena; (5) failing to allege that illegally obtained evidence of corporate or financial records was introduced at trial; (6) failing to raise jurisdictional issue concerning jury instructions that pertained to federal offenses; (7) failing to allege the conviction violated double jeopardy; (8) failing to argue that the "upward departure" in sentencing violated Blakely and Apprendi; (9) failing to argue that trial court erred in denying a judgment of acquittal on predicate offense of grand theft; (10) failing to argue trial court error in imposition of order of restitution and court costs; (11) failing to move to supplement the record with a transcript of a Nelson hearing, or to assert that no Nelson hearing was conducted; (12) failing to assert a Confrontation Clause violation based on State's presentation of third-party information, documents, and evidence without a records custodian; (13) failing to withdraw from representation of Petitioner based on conflict of interest; and (14) failing to "federalize" certain of Petitioner's claims in the direct appeal.  Ex. VV1 Ex. CCC; State's Responses at Exs. BBB and DDD.

First District Court of Appeal denied the petition per curiam.  Ex. FFF.  *See* Ali-X v. State, 182 So. 3d 638 (Fla. 1st DCA 2016) (table).

During the pendency of the habeas proceeding in the state First District Court of Appeal, Petitioner filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) on May 28, 2015.  Ex. PP at 43-76.  The motion was summarily denied on June 12, 2015.  Ex. PP at 77-96.  Petitioner appealed and the First District Court of Appeal affirmed per curiam without opinion on October 23, 2015, and the mandate was issued November 18, 2015.  Ex. SS.  *See* Ali-X v. State, 177 So. 3d 252 (Fla. 1st DCA 2015) (table).  Petitioner's notice to invoke discretionary jurisdiction in the Florida Supreme Court was dismissed on December 2, 2015, for lack of jurisdiction.  Ex. TT, UU.  *See* Ali-X v. State, 192 So. 3d 34 (Fla. 2015) (table).

Also during the pendency of the habeas proceeding in the state appellate court, on December 23, 2015, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. GGG.   Prior to any ruling or order on that motion, Petitioner, on February 29, 2016, filed his first petition for habeas corpus pursuant to § 2254 in this

Court.  ECF No. 1.  Petitioner's amended § 2254 petition was filed in this Court on May 26, 2016.[7]  ECF No. 14.

On June 8, 2016, in the state court, Petitioner's Rule 3.850 motion was dismissed for failure to comply with the rule's filing requirements.  Ex. HHH.  An amended Rule 3.850 motion was filed in state court on August 3, 2016, Ex. III, and motion to supplement Rule 3.850 on August 5, 2016.  Ex. JJJ.  On October 10, 2016, the amended Rule 3.850 motion was dismissed by the state post-conviction court as facially insufficient, but with leave to amend.  Ex. KKK.

As noted above, on May 26, 2016, Petitioner filed his amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following grounds for relief:

---

[7] On March 31, 2016, Petitioner filed a motion for stay/abeyance stating that he recently received a denial of relief in the state court on his claims of ineffective assistance of appellate counsel and needed to amend his petition in this Court.  ECF No. 9.  This Court issued an order allowing amendment on May 2, 2016.  ECF No. 10. Petitioner's amended petition was filed on May 26, 2016, and docketed on May 31, 2016.  ECF No. 14.  On June 27, 2016, Petitioner filed a motion for status summary and clarification of request for stay/abeyance.  ECF No. 16.  In that motion, Petitioner stated that he filed a second motion for stay on May 26, 2016, indicating a copy was attached as Exhibit 3 to that motion for clarification.  ECF No. 16.  However, no second motion for stay or abeyance appears on the docket.  Petitioner alleged in his motion for clarification that the Court never addressed the second motion to stay, which he said "clearly stated that he has a pending 3.850 post-conviction motion in the First Judicial Circuit."  ECF No. 16 at 3.  The legal mail stamp showing when the alleged second motion to stay was provided to the prison for mailing purports to show a date of 5-26-16, but the number 5 also appears to be a number 6.  On June 29, 2016, this Court denied the motion for clarification, stating that the petition has been amended and served.  ECF No. 17.

**Ground 1:** Petitioner's sentence violated the requirements of federal precedent governing sentencing by using unauthorized sentencing facts to depart from sentencing guidelines; and appellate counsel was ineffective for failing to raise this issue on direct appeal. ECF No. 14 at 6.

**Ground 2:** Appellate counsel rendered ineffective assistance by failing to properly present the four issues on appeal and by failing to raise issues identified in this petition, constituting cumulative error. ECF No. 14 at 8.

**Ground 3:** Appellate counsel rendered ineffective assistance by failing to raise the issue of lack of subject matter jurisdiction. ECF No. 14 at 9.

**Ground 4:** Appellate counsel rendered ineffective assistance by failing to raise <u>Brady</u> and <u>Giglio</u> error on appeal when, after trial, Petitioner informed counsel of newly discovered evidence that the State failed to subpoena the bank records it relied on at trial. ECF No. 14 at 12.

**Ground 5:** Appellate counsel rendered ineffective assistance by failing to argue that the state introduced illegally seized evidence at trial. ECF No. 14 at 15.

**Ground 6:** Appellate counsel rendered ineffective assistance by failing to argue that the State could not charge Petitioner with federal predicate offenses. ECF No. 14 at 16.

**Ground 7:** Appellate counsel rendered ineffective assistance by failing to argue that a Double Jeopardy violation occurred when the jury was instructed on mail fraud and wire fraud for the same income tax returns. ECF No. 14 at 17.

**Ground 8:** Appellate counsel rendered ineffective assistance by failing to argue that third-party evidence, including deeds, corporate seals, Florida Department of Revenue records, and driver's license, was admitted in violation of the Confrontation Clause. ECF No. 14 at 18.

**Ground 9:** Appellate counsel breached her contract with Petitioner by deliberately creating a conflict of interest during the preparation of the direct appeal and by sabotaging Petitioner's direct appeal. ECF No. 14 at 19.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . .  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."
Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at
690). Federal courts are to afford "both the state court and the defense
attorney the benefit of the doubt." *Id.* at 13. The reasonableness of
counsel's conduct must be viewed as of the time of counsel's conduct. *See*
Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at
690).

To demonstrate prejudice under Strickland, a defendant "must show
that there is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different." 466 U.S. at
694. "A reasonable probability is a probability sufficient to undermine
confidence in the outcome." *Id.* For this Court's purposes, "[t]he question
'is not whether a federal court believes the state court's determination'
under the Strickland standard 'was incorrect but whether that determination
was unreasonable—a substantially higher threshold.' " Knowles v.
Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550
U.S. 465, 473 (2007)). "And, because the Strickland standard is a general
standard, a state court has even more latitude to reasonably determine that
a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123.
It is a "doubly deferential judicial review that applies to a Strickland claim

evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. Strickland, 466 U.S. at 697.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland." Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). To succeed in a claim of ineffective assistance of appellate counsel, the Petitioner must show a "serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and . . . [that] the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Shoenwetter v. State, 46 So. 3d 535, 563 (Fla. 2010) (quoting Pope v. Wainwright, 496 So. 2d 798, 800 (Fla. 1986)). If the legal issue would in all probability have been found to be without merit, the failure of appellate counsel to raise it will not render counsel's performance ineffective. Shoenwetter, 46 So. 3d at 563. This inquiry requires the court to consider the merits of the omitted claim, because Petitioner must show that there is a reasonable probability of success on appeal. *See* Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991). Further, appellate counsel does not perform deficiently for failing to

raise every non-frivolous ground for appeal.  Smith v. Robbins, 528 U.S.

259, 288 (2000).  "[T]he practice of 'winnowing out' weaker arguments on

appeal, so to focus on those grounds that are more likely to prevail, is the

'hallmark of effective appellate advocacy.' "  Hargrove v. Solomon, 227 F.

App'x 806, 808 (11th Cir. 2007) (unpublished opinion) (quoting Smith v.

Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745,

751 (1983))).

## Ground 1: Illegal Sentence

Petitioner contends his twenty-year prison sentence violated the

requirements of federal precedent governing sentencing by using facts not

found by a jury to depart from sentencing guidelines and that his appellate

counsel rendered ineffective assistance by failing to urge this error on

direct appeal.  ECF No. 14 at 6.  The claim of illegality of his sentence was

raised in the trial court in Petitioner's motion to correct illegal sentence

under Florida Rule of Criminal Procedure 3.800(a).  Ex. PP at 43.  The

motion was denied on the basis that the offense for which Petitioner was

convicted and sentenced carried a sentence not to exceed 30 years.  Ex.

PP at 78.  According to the Criminal Punishment Code Scoresheet, the

lowest permissible prison sentence was 40.65 months.  *Id.*  The state court

further found that the scoresheet correctly scored his prior criminal record.

*Id.*  Petitioner appealed and filed an initial brief in the First District Court of

Appeal where he argued that the 20-year sentence was an illegal upward

departure sentence in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466

(2000), <u>Blakely v Washington</u>, 542 U.S. 296 (2004), and other United

States Supreme Court precedent.  Ex. QQ at 8.  The district court of appeal

affirmed per curiam.  Ex. SS.  This state court adjudication on the merits is

entitled to AEDPA deference.  *See, e.g.*, <u>Richter</u>, 562 U.S. at 98.

This aspect of Ground 1 is without merit.  <u>Apprendi</u> held that

sentencing facts that increase the penalty for a crime beyond the

prescribed statutory maximum, other than the fact of a prior conviction,

must be submitted to a jury.  <u>Apprendi</u>, 530 U.S. at 490.  <u>Blakely</u> held that

the "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a

judge may impose solely on the basis of the facts reflected in the jury

verdicts or admitted by the defendant.  In this case, the trial judge could

have imposed a sentence between the scored low of 40.65 months to a

maximum of 30 years in prison.  Petitioner argues that the sentence was

improperly increased based on the scoring of 31-year-old criminal

convictions, and he argues that the maximum sentence that could be

imposed without consideration of those convictions was 54 months.

The trial court sentencing scoresheet, Ex. H at 1559-61, does not state that a maximum sentence would be 54 months.  It states, instead, that based on the scoring of the current offense and prior offenses, the lowest permissible sentence is 40.65 months and the maximum sentence is up to the statutory maximum for the primary offense.  Ex. H at 1560.  At the sentencing hearing, Petitioner, who was appearing pro se, confirmed to the court that the sentencing scoresheet was correct.  Ex. T at 4 (transcript pagination).  As to his criminal history, Petitioner noted that the convictions were 31 years old.  Ex. T at 5.

Petitioner argues that, contrary to Blakely and Apprendi, the trial court sentenced him in part based on the inappropriate factor of "escalating criminal pattern of activity."  Nowhere in the sentencing scoresheet or the sentencing hearing does the court impose a sentence based on a finding of an "escalating pattern of activity."  And nowhere in the sentencing scoresheet or the sentencing hearing does the trial court impose a sentence in excess of the maximum sentence that could be imposed based on the jury's verdict alone.  The state court denied Petitioner's claim that the prior convictions could not be scored, explaining that "Florida Rule of Criminal Procedure 3.701(d)(5)(F), states "[a]n offender's prior record shall not be scored if the offender has maintained a conviction-free record for a

period of 10 consecutive years from the most recent date of release from confinement, supervision, or sanction . . . ."  Ex. P at 78.  The court then noted that Petitioner was sentenced to two years in prison in a Jefferson County, Florida, case less than three years before the instant offense.  *Id.*

Moreover, the scoring of prior convictions, which was properly included under Florida law, and which under Apprendi were not required to be found by a jury, did not play a part in setting a statutory maximum. Instead, that scoring implicated only the setting of the lowest permissible sentence under the scoresheet.  *See* § 921.0024(2), Fla. Stat. (2007).   The maximum sentence was set by statute.  The 20-year prison sentence imposed by the court was legally imposed under the sentencing provisions of section 775.082, Florida Statutes, for violation of 895.03(4), Florida Statutes.  The state court's adjudication that the sentence was not illegal under Apprendi or Blakely, or under Florida law, is entitled to deference and is correct.

In the second part of Petitioner's Ground 1 he contends that his appellate counsel was ineffective in not raising the issue of illegal sentence on direct appeal.  He raised this claim in his petition for writ of habeas corpus in the state appellate court alleging ineffective assistance of appellate counsel.  Ex. VV.  The appellate court denied the claim.  Ex. FFF.

This adjudication on the merits is entitled to AEDPA deference even though no reasoning is set forth in the decision.  *See* Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).

Because there is no merit to the claim that the sentence was illegal, appellate counsel on direct appeal had no basis on which to claim error. Appellate counsel is not deficient for failing to raise a meritless claim.  *See, e.g.*, Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008).  Further, the state court's denial of the claim of ineffective assistance of appellate counsel was correct and reasonable under Florida law and Petitioner cannot demonstrate that even if counsel had raised the claim on direct appeal, there is a reasonable probability that the outcome of the direct appeal would have been different.  For all these reasons, federal habeas relief for Ground 1 should be denied.

### Ground 2: IAC of Appellate Counsel—Cumulative Error

Petitioner next contends that appellate counsel rendered ineffective assistance by failing to properly present the four issues that were presented on direct appeal and by failing to raise the other issues identified in this petition, thereby constituting cumulative error.  ECF No. 14 at 8, 36-38.  Respondent correctly notes that this cumulative error claim was not

presented in state court.  ECF No. 31 at 37.  Regardless of a failure to exhaust this claim, it is without merit.

Although the Supreme Court has not directly addressed the cumulative error doctrine in the context of an ineffective assistance of counsel claim, it has been held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 564-65 (11th Cir. 2009) (unpublished) (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984)).  Moreover, unless Petitioner can demonstrate in this proceeding that more than one of his claims has merit, any cumulative error claim must necessarily fail as there would be no error to cumulate.  *See* Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012); Finch v. Sec'y, Dep't of Corr., 643 F. App'x 848, 853 (11th Cir.), cert. denied, Finch v. Jones, 137 S. Ct. 519 (2016); Insignares v. Sec'y Fla. Dep't of Corr., 755 F.3d 1273, 1284 (11th Cir. 2014); Forrest, 342 F. App'x at 565. Accordingly, federal habeas relief based on Ground 2 claim should be denied.

## Ground 3: Failure to Raise Subject Matter Jurisdiction on Appeal

Petitioner contends that appellate counsel rendered ineffective assistance by failing to raise the issue of lack of subject matter jurisdiction on direct appeal.  ECF No. 14 at 9.  He argues that his racketeering charge involved two or more judicial circuits and, therefore, the charge must be made not by information but by indictment because, he contends, only the grand jury had jurisdiction to bring the racketeering charge.  ECF No. 14 at 9, 39.  Thus, his claim is aimed at the "jurisdiction" of the charging entity to bring the charge, not the subject matter jurisdiction of the circuit court where he was tried and convicted.

This claim was raised in Petitioner's petition for writ of habeas corpus alleging ineffective assistance of appellate counsel in the First District Court of Appeal.  Ex. VV1 at 31-48.  The state court denied relief without explanation.  Ex. FFF.  This per curiam denial is an adjudication on the merits and is entitled to AEDPA deference.  *See* Wright, 278 F.3d at 1254.

The claim is without merit.  To the extent that Petitioner alleges that his appellate counsel should have argued that the state attorney had no "jurisdiction" to file an information alleging felonies arising out of conduct in two or more counties, that claim is also without merit.  Under Florida law, the circuit court has jurisdiction over felony prosecutions.  *See* Art. V, § 5,

20(b)(3), Fla. Const.   Moreover, the Florida Supreme Court has made clear that a lack of authority to prosecute does not divest the circuit court of jurisdiction over felony charges, and a conviction resulting from an information signed by a state officer lacking authority is not void ab initio. *See* Carbajal v. State, 75 So. 3d 258, 260 (Fla. 2011).  Thus, Petitioner's claim has nothing to do with "subject matter jurisdiction."

Moreover, the cases and statutes cited by Petitioner in his memorandum do not indicate, as he contends, that a state attorney is precluded from prosecuting a racketeering charge arising from conduct in two or more judicial circuits.  Nor do the cases and authorities cited by Petitioner hold that only a grand jury has jurisdiction to bring racketeering charges that arise from conduct in more than one judicial circuit.  To the contrary, under Florida law, the Officer of Statewide Prosecutor and the Office of the State Attorney had "concurrent jurisdiction" to charge and prosecute the charges brought in this case.   *See* Art. IV, § 4(b), Fla. Const. Section 16.56, Florida Statutes (2011), also states that the Office of the Statewide Prosecutor "may" prosecute RICO violations.  Both the prosecutor and the grand jury have concurrent authority under the Florida Constitution to file formal accusation, by indictment or information, of felonies not involving capital punishment.  *See* Art. I, § 15(a), Fla. Const.;

State ex rel. Hardy v. Blount, 261 So. 2d 172 (Fla. 1972) (holding that the

prosecutor and the grand jury have concurrent authority to file formal

accusation of the commission of a felony not involving capital punishment

by indictment or information pursuant to Art. I, § 15(a), Fla. Const.).  The

state Fourth District Court of Appeal made clear in Spaulding v. State, 965

So. 2d 350 (Fla 4th DCA 2007), that a statewide prosecutor's ability to file

charges is limited to those circumstance where the crimes occurred in two

or more judicial circuits, but this does not give the statewide prosecutor

exclusive jurisdiction to prosecute racketeering offenses involving more

than one county.  *Id.*  In rejecting the defendant's claim in Spaulding, the

court stated:

> The appellants allege that the statewide prosecutor has
> exclusive jurisdiction to prosecute offenses that are committed
> in more than one county.  Here, because the fraudulent checks
> were cashed in numerous counties, in addition to St. Lucie
> County, the pair argues that only the statewide prosecutor
> could file charges against them.  They allege that, because the
> statute of limitations on the offense has run, they must be
> forever discharged for their crimes.
>
> Appellants cite cases that do not stand for what they
> allege and rely on the Florida Constitution's provision creating
> the position of the statewide prosecutor.  That provision,
> however, *expressly* states that the statewide prosecutor "shall
> have *concurrent* jurisdiction with the state attorneys to
> prosecute violations of criminal laws . . ." Art. IV, § 4(b), Fla.
> Const. (emphasis added); *see also* § 16.56(1)(a) 3, Fla. Stat.
> (2000) (setting out the authority of the Office of the Statewide

Prosecutor (OSP) and providing that the OSP "may" prosecute
RICO violations).

While the statewide prosecutor can file charges only if the
criminal violation occurred in two or more judicial circuits as part
of a related transaction, this does not give the statewide
prosecutor exclusive jurisdiction to prosecute continuing
offenses that span multiple counties. *See* Winter v. State, 781
So. 2d 1111 (Fla. 1st DCA 2001) (holding that OSP has
authority to prosecute crimes only if they involve two or more
judicial circuits and are either part of a related transaction or
part of an organized conspiracy) *see also* Snyder v. State, 715
So. 2d 367 (Fla. 5th DCA 1998).

Here, the statewide prosecutor had jurisdiction to file the
RICO charges against the appellants, but the State Attorney for
the Nineteenth Judicial Circuit had concurrent jurisdiction to file
the charges as well. The appellants were alleged to have
committed numerous acts in St. Lucie County which constituted
a pattern of racketeering activity. The trial court clearly had
jurisdiction.

*Id.* at 351 (some citations omitted).

Appellate counsel was not shown to be deficient for failing to raise

this meritless claim on direct appeal. *See, e.g.*, Freeman, 536 F.3d at

1233. This jurisdictional issue is one of Florida law and even if appellate

counsel had raised this claim of error on appeal, there is no reasonable

probability that the outcome of the appeal would have been different—a

reasonable probability being one sufficient to undermine confidence in the

outcome. Strickland, 466 U.S. at 694. Petitioner cannot demonstrate that

the adjudication of the state court was contrary to, or an unreasonable

application of, federal law as determined by the Supreme Court or that it

was an unreasonable determination of the facts in light of the state court record. Accordingly, federal habeas relief on this ground is not warranted and should be denied.

### Ground 4: Failure to Raise Brady and Giglio on Appeal

Petitioner claims that appellate counsel rendered ineffective assistance by failing to raise <u>Brady</u> and <u>Giglio</u> error on appeal when, after trial, Petitioner informed counsel of "newly discovered evidence" that the State had not properly subpoenaed the bank records it relied on at trial. ECF No. 14 at 12, 44. He argues that he learned from a newspaper article after trial that the prosecutor stated he could not subpoena bank records.[8] At trial, bank and other financial records were admitted into evidence. Petitioner argues that the prosecutor stated many times during trial that the records had been subpoenaed. *Id.* He contends that if no proper subpoenas were employed to obtain the records, as the news article suggested, the records would therefore have been "illegally seized." ECF No. 14 at 46.

The claim was raised in Petitioner's habeas petition to the state appellate court alleging appellate counsel was ineffective for failing to raise

---

[8] Petitioner characterizes this new report of comments by the prosecutor as a stipulation that the bank records could not be subpoenaed, but no actual stipulation to that effect has been identified.

a Brady and Giglio claim based on the information gleaned from a

newspaper article. *See* VV1. The claim was denied by the First District

Court of Appeal without explanation. Ex. FFF.

Respondent points out that this claim relating to lack of a subpoena

was not raised at trial by Petitioner, who appeared pro se. Thus, appellate

counsel had no basis on which to raise the claim on direct appeal.

Appellate counsel was not deficient for failing to raise an issue which was

not properly raised at trial. *See* Williamson v. Dugger, 651 So. 2d 84, 86-

87 (Fla. 1994). In fact, no state court has ruled on a Brady or Giglio claim

pertaining to the issue of a subpoena for the financial records introduced at

trial in this case.

In addition, during the State's presentation of evidence concerning

Petitioner's bank records and those of his corporations, it was apparent that

that the bank witnesses compiled and produced the bank records pursuant

to subpoena. For example, Amanda White, records custodian for Wells

Fargo, also known as Wachovia Bank, testified that the bank records she

identified and testified about were produced in response to a subpoena.

Ex. N at 550 (transcript pagination). When Petitioner recalled Amanda

White in his own case, the prosecutor mentioned that "[t]here were multiple

subpoenaes . . . ." Ex. R at 1161 (transcript pagination) (in reference to a

letter from a bank in response to a subpoena).  Records custodian Beverly

White testified about Petitioner's J.P. Morgan bank accounts in the name of

Divine Hands Construction and Real Estate Development, Inc.  Ex. M at

438.  She also testified about Petitioner's Washington Mutual Bank account

records for accounts opened in the name of 21st Century Tax Master.  Ex.

N at 492.  Washington Mutual was acquired by J.P. Morgan.  Beverly White

testified that she works in the subpoena department and gathers evidence

pursuant to subpoena.  Ex. N at 543.  Investigator Furmaniuk testified on

cross-examination by Petitioner that "there were a number of accounts that

was subpoenaed under your name and a company."  Ex. Q at 1005

(transcript pagination).

A doubly deferential standard applies in claims of ineffective

assistance of counsel and demands that state-court decisions be given the

benefit of the doubt.  Pinholster, 563 U.S. at 181. As noted earlier:

> Section 2254(d) reflects the view that habeas corpus is a
> "guard against extreme malfunctions in the state criminal justice
> systems," not a substitute for ordinary error correction through
> appeal.  Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979)
> (Stevens, J., concurring in judgment).  As a condition for
> obtaining habeas corpus from a federal court, a state prisoner
> must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that
> there was an error well understood and comprehended in
> existing law beyond any possibility for fairminded disagreement.

Richter, 562 U.S. at 102 (citation omitted).  Under that standard, and

because the claim lacks merit, Petitioner has failed to demonstrate that an

error of appellate counsel occurred that is understood and comprehended

beyond any possibility of fairminded disagreement.  For these reasons,

federal habeas relief on this ground should be denied.

### Ground 5: Failure to Raise Illegal Search on Appeal

In his next ground, Petitioner argues that appellate counsel rendered

ineffective assistance by failing to argue that the state introduced illegally

seized evidence at trial.  ECF No. 14 at 15.  This claim was presented in

Petitioner's petition for writ of habeas corpus in the First District Court of

Appeal, Ex. VV1 at 67-79, and was denied.  Ex. FFF.  Petitioner argues

that appellate counsel should have argued on appeal that evidence

obtained from an unlawful search was introduced at trial, including:

information, financial records, and tax preparation software belonging to

21st Century Tax Masters, Inc.; information and names extracted from the

21st Century Tax Masters materials; deeds; three corporate seals from

Petitioner's corporations; Petitioner's driver's license and passport; and

Petitioner's bank records.  ECF No. 14 at 49-52.

Respondent contends that the adjudication by the state court denying

that counsel was ineffective in failing to raise this issue is entitled to a high

degree of AEDPA deference and, further, that the claim is without merit. ECF No. 31 at 48-49. As the state argued in the state habeas proceeding, and now argues here, the records and evidence that were introduced at trial were obtained from independent sources such as financial institutions or state agencies. The Respondent further notes that in Issue 3 of the direct appeal brief, it was contended that the trial court erred in denying the pretrial motion to suppress, which was based on the argument that the search warrant did not comply with section 933.18, Florida Statutes. *See* Ex. Y at 37-44. The Respondent correctly points out that, at trial, the prosecutor presented no testimony about the search of Petitioner's home or the items seized at that location. ECF No. 31 at 49.

Petitioner argues that, in spite of the prosecutor's representations that nothing seized in the search of Petitioner's home would be used at trial, evidence was submitted that flowed from that search, including corporate information, Turbo Tax software, credit cards, and bank records of 21st Century Tax Masters, Inc. ECF No. 14 at 49-51. He does not identify where in the record of the trial each of these items were introduced or how they related to any items seized from Petitioner's home in what he contends was an illegal search. Moreover, the corporate and financial records introduced at trial were obtained from financial institutions and

state agencies.[9]  *See* Exs. M at 438-457; Ex. N at 490-585; Ex. P at 836-850.

For the foregoing reasons, appellate counsel was not shown to be deficient for raising this claim on direct appeal and the state court has not been shown to have unreasonably denied the claim of ineffective assistance of appellate counsel.  Even if this claim could be said to have marginal merit, appellate counsel is not required to raise every non-frivolous claim on direct appeal.  Jones v. Barnes, 463 U.S. 745, 754 (1983).  Effective appellate counsel winnows out weaker arguments even if those arguments may have some merit.  *Id.*  The exercise of judgment makes it "difficult to demonstrate that [appellate] counsel was incompetent" for omitting a particular argument.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).  Petitioner has not demonstrated that it was reasonably probable that, but for appellate counsel's alleged error, he would have prevailed on appeal.  *See*

---

[9] For example, J.P. Morgan records custodian Beverly White testified about Petitioner's bank records for accounts in the name of Divine Hands Construction and Real Estate Development, Inc.  Ex. M at 438.  She also testified about Petitioner's bank records of Washington Mutual Bank, acquired by J.P. Morgan, for accounts opened in the name of 21st Century Tax Master.  Ex. N at 492.  White testified that she works in the subpoena department and gathers evidence pursuant to subpoena.  Ex. N at 543.  Amanda White, records custodian for Wells Fargo, also known as Wachovia Bank, testified that the bank records she identified and testified about were produced in response to a subpoena.  Ex. N at 550 (transcript pagination).  The account she testified about was in the name of Kareem Ali X.  Ex. N at 551.

Smith, 528 U.S. at 286.  Petitioner has failed to overcome the strong presumption that appellate counsel used reasonable professional judgment in making all significant decisions concerning the best issues to raise on direct appeal. Strickland, 466 U.S. at 690.

In light of the doubly-deferential judicial review applied to this Strickland claim, Petitioner has failed to show that the state court's adjudication of this claim was contrary to or an unreasonable application of Strickland or any federal law as determined by the Supreme Court, or that it was an unreasonable determination of the facts in light of the state court record.  Federal habeas relief should be denied on Ground 5.

### Ground 6: Failure to Challenge Predicate Offenses on Appeal

Petitioner claims that appellate counsel rendered ineffective assistance by failing to argue that the State could not "charge" Petitioner with two federal crimes—wire fraud and mail fraud—as predicate offenses. ECF No. 14 at 16.  This claim was presented in Petitioner's state petition for writ of habeas corpus alleging ineffective assistance of appellate counsel.  Ex. VVI at 79-82.  The state court denied relief without explanation.  Ex. FFF.

Petitioner was charged with and convicted of conspiring to commit the state offense of racketeering, in that he conspired with two other

individuals to obtain income tax refunds to which they were not entitled by means of conducting or participating, directly or indirectly, in the affairs of the alleged enterprise through a pattern of "racketeering activity," by commission of, or solicitation of another to commit, at least two incidents of crimes chargeable under section 817.568(2)(a), Florida Statutes, relating to criminal use of personal information; 18 U.S.C. § 1341, relating to mail fraud; 18 U.S.C. § 1343, relating to wire fraud; and/or section 812.014, Florida Statutes, relating to theft. Ex. C at 552.  Section 895.03, Florida Statutes, provides:

> (1) It is unlawful for any person who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of **racketeering activity** or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

> (2) It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

> (3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.

> (4) **It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3)**.

§ 895.04(1)-(4), Fla. Stat. (2007) (emphasis added).  "Racketeering activity"

means to commit, or attempt to commit, or to conspire to commit, or to

solicit, coerce, or intimidate another person to commit certain crimes,

including "[a]ny conduct defined as 'racketeering activity' under 18 U.S.C.

s. 1961(1)."  § 895.02(1)(b), Florida Statutes (2007).  Under 18 U.S.C.

§ 1961(1)(B), racketeering activity includes "any act which is indictable

under any of the following provisions of title 18, United States Code: . . .

section 1341 [mail fraud], section 1343 [wire fraud], section 1344 [financial

institution fraud]"

Petitioner contends that the state had no authority to "charge and

convict" him of the two federal predicate offenses.  However, Petitioner was

charged and convicted only of a Florida offense—conspiracy to commit

racketeering.  The conviction of the Florida offense was not predicated on

Petitioner's "conviction" of two federal offenses.  The definition of

"racketeering activity" under Florida law refers to acts that would be

"indictable" under the federal provisions.  A similar claim was raised in the

Third District Court of Appeal in Rogers v. State, 487 So. 2d 57 (Fla. 3d

DCA 1986).  There, the court held that the Florida RICO act forbids

racketeering, not the federal crime of mail fraud per se.  The court made

clear that racketeering is the crime and that the federal offenses referred to

in the Florida RICO act "are definitional only."  *Id.* at 58.  *See also* <u>Vickery</u>

<u>v. State</u>, 539 So. 2d 499, 502 (Fla. 1st DCA 1989) (same).

Because this claim lacks merit, the state court adjudication that

appellate counsel was not ineffective for failing to raise this claim cannot be

shown to be contrary to <u>Strickland</u> or any other federal law as determined

by the Supreme Court.  Habeas relief as to Ground 6 should be denied.

### Ground 7: Failing to Raise Double Jeopardy on Appeal

In his next claim, Petitioner contends that appellate counsel rendered

ineffective assistance by failing to argue that a Double Jeopardy violation

occurred when the jury was instructed on mail fraud and wire fraud for the

same income tax returns.  ECF No. 14 at 17.  This claim was raised in

Petitioner's state petition for writ of habeas corpus filed in the First District

Court of Appeal.  Ex. VV1 at 83-85.  The court denied the claim—an

adjudication which is entitled to AEDPA deference in this Court.  *See*

<u>Richter</u>, 562 U.S. at 98 (holding that for an adjudication on the merits, there

is no requirement that the state court give a statement of reasons).  The

habeas petitioner must show that there was no reasonable basis for the

state court to deny relief.  *Id.*

As discussed in Ground 6 above, Petitioner was not "convicted" of

two federal offenses.  He was charged with and convicted only of one state

offense.  Because the claim is devoid of merit, the First District Court of
Appeal had a reasonable basis on which to deny relief.  Petitioner has
failed to demonstrate a basis for federal habeas relief in this Court and
Ground 7 should be denied.

## Ground 8: Failure to Raise Confrontation Clause Violation on Appeal

Petitioner contends that appellate counsel rendered ineffective
assistance by failing to argue that third-party evidence, including deeds,
corporate seals, Florida Department of Revenue records, and his driver's
license, was admitted in violation of the Confrontation Clause.  ECF No. 14
at 18.  This claim was raised in Petitioner's state petition for writ of habeas
corpus in the appellate court.  Ex. VV1 at 114-18.  The state court denied
the claim.  Ex. FFF.

The Respondent correctly notes that Petitioner, who represented
himself at trial, failed to object to introduction of the evidence on the basis
of a Confrontation Clause violation.  ECF No. 31 at 61.  For that reason
alone, appellate counsel cannot be deficient for failing to raise the issue on
direct appeal.  *See* Williams v. State, 967 So. 2d 753, 747 n.11 (Fla. 2007)
(holding that a specific objection is necessary to preserve challenge under

Crawford v. Washington (citing Shoenwetter v. State, 931 So. 2d 857, 871 (Fla.), cert. denied, 549 U.S. 1035 (2006))).[10]

Petitioner argues that prior to trial, "he objected to the use of third party evidence that violates Crawford v. Washington."  ECF No. 14 at 57. However, he fails to identify the specific portion of the record where he made that objection, stating only "See Record."  *Id.*   In his claim in the First District Court of Appeal, petitioner contends he preserved his Crawford issue in a motion filed prior to trial and cites Exhibit 63 to his petition for writ of habeas corpus.  Ex. VV1 at 115; Ex. C at 476.  That document, titled "Objection to Request for Judicial Notice," raised only a hearsay objection to certain records and evidence the state may offer at trial.  Ex. C at 476-77.  The requests for judicial notice by the State all involved certified copies of official records.  *See* Ex. A at 68, 74, 78; Ex. B at 270, 272, 275, 279, 289, 306, 395; Ex. C at 433, 456, 466, 469.  Petitioner's hearsay objection to requests for judicial notice of certified records was not sufficient under Florida law to preserve a Crawford Confrontation Clause objection.  *See* Williams, supra.

Under the doubly-deferential standard applicable to this Strickland claim, Petitioner has failed to demonstrate that the adjudication of the State

---

[10] Crawford v. Washington, 541 U.S. 36 (2004).

court is contrary to <u>Strickland</u> or any federal law as determined by the Supreme Court, or that is it an unreasonable determination of the facts in light of the state court record. Federal habeas relief on Ground 8 should be denied.

## Ground 9: Appellate Counsel Conflict of Interest

In his last ground, Petitioner contends that appellate counsel breached her contract with him by deliberately creating a conflict of interest during the preparation of the direct appeal and by sabotaging the direct appeal. ECF No. 14 at 19. This claim was raised in state court and denied, which constitutes a ruling on the merits. Ex. FFF. Petitioner argues that his appellate counsel on direct appeal did not raise any racketeering issues and violated the agreement he said he had with her to draft his own arguments for the appeal. ECF No. 14 at 61. He claims that counsel agreed to send him an advance copy of the brief but he never received it, although he also argues that he contacted counsel and complained about the " 'unprofessional' style of her rough draft brief." ECF No. 14 at 63. He argues that he asked for part of the attorney's fee back, which was not agreed to.

During the direct appeal, Petitioner filed a pro se motion asking to withdraw his counsel's appellate brief and requesting appellate counsel to

withdraw.  Ex. AA.  He also asked to represent himself and to file an expanded brief of 100 pages.  *Id.*  Petitioner's counsel then filed a motion to withdraw based on Petitioner's pro se motion.  Ex. BB.  Petitioner's pro se motion was struck as unauthorized and his counsel's motion to withdraw was denied.  Exs. EE, FF.  Petitioner then filed a petition for writ of prohibition in the Florida Supreme Court raised his complaint about his appellate counsel and seeking to represent himself in his appeal.  Ex. MM.  The petition was transferred to the district court of appeal and was denied on the merits on March 26, 2014.  Ex. OO.  *See* Ali X v. State, 134 So. 3d 958 (Fla. 1st DCA 2014) (table).

Petitioner contends in this Court that due to appellate counsel's hostility and refusal to file his claims, he had an actual conflict of interest with his counsel which resulted in an appeal which was unfair and unjust. ECF No. 14 at 65, 81.  Petitioner also contends that because the State asked the appellate court to consolidate his appeal with that of his co-defendant "for travel," his case was decided by a potentially biased panel because that same panel had already affirmed the conviction and sentence of his co-defendant.[11]  ECF No. 14 at 81.  Respondent notes that

---

[11] The cases were consolidated for travel only and no joint representation occurred.

Petitioner's appellate counsel did, in fact, file a motion to withdraw, which was denied by the appellate court, and that no deficiency of counsel or prejudice has been shown.  ECF No. 31 at 64-65.

Petitioner couches his claim of ineffective assistance of counsel as one of a conflict of interest.  However, a true conflict of interest must be actual and not merely potential or hypothetical.  Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).  The mere possibility of a conflict is insufficient and the claim must be based on a showing that counsel has interests inconsistent with the defendants and that the conflict adversely affected the lawyer's performance.  *Id.* at 348.  Both prongs of this test—actual conflict and adverse effect on counsel's performance—must be met.  *See* Buenoano v. Singletary, 74 F.3d 1078, 1086 (11th Cir. 1996); Smith v. White, 815 F.2d 1401, 1404 (11th Cir. 1987).

Disagreement over whether counsel is properly preparing the appeal and unhappiness with the representation does not create an actual conflict of interest, nor does it demonstrate prejudice or ineffective assistance.  "Mere unhappiness or anger with the representation of counsel, or disagreement with regard to counsel's strategic decisions, does not render counsel ineffective."  Taylor v. State, 87 So. 3d 749, 758 (Fla. 2012).  The Supreme Court in United States v. Cronic explained:

> [T]he appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance. It is for this reason that we attach no weight to either respondent's expression of satisfaction with counsel's performance at the time of his trial, or to his later expression of dissatisfaction.

466 U.S. 648, 657 n.21 (1984) (citations omitted). These same principles apply to appellate counsel's performance. The Sixth Amendment does not guarantee that the defendant will have a "meaningful relationship" with counsel. Morris v. Slappy, 461 U.S. 1, 14 (1983).

Petitioner's main complaint with his counsel is that she did not adopt his claims of error that were based on racketeering law, but he has failed to identify an issue of merit regarding the racketeering law for which there would have been a reasonable probability of success on appeal. He has not shown that counsel had interests adverse to him, and his unhappiness with her brief is not evidence of a conflict of interest. There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" in deciding the most meritorious issues to raise on appeal. Strickland, 466 U.S. at 690. Even if Petitioner's claims of error regarding the application of the racketeering law in his case were not frivolous, appellate counsel is not required to raise every non-frivolous claim. Robbins, 528 U.S. at 288.

Counsel was not deficient for "winnowing out" weaker arguments on appeal. <u>Hargrove</u>, 227 F. App'x at 808.

Petitioner has not demonstrated a claim of error that meets the requirements of § 2254(d). For these reasons, his Ground 9 should be denied.

## <u>Conclusion</u>

Based on the foregoing, Petitioner Kareem Ali is not entitled to federal habeas relief. Accordingly, the amended § 2254 petition (ECF No. 14) should be denied.

## <u>Certificate of Appealability</u>

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S.

473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the amended § 2254 petition (ECF No. 14).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk is directed to substitute Julie L. Jones, Secretary of the Department of Corrections, as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on October 27, 2017.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**